IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Bernard Battle (09516-007), ) | |
| ) | |
| Petitioner, ) | |
| ) | Case No. 21 C 50358 |
| v. ) | |
| ) | Hon. Iain D. Johnston |
| ) | |
| Andrew Ciolli, Warden, ) | |
| USP Thomson, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION AND ORDER

Petitioner Bernard Battle, a prisoner convicted in the District of Columbia and incarcerated at USP Allenwood in Allenwood, Pennsylvania, has filed a habeas corpus petition under 28 U.S.C. § 2241 challenging the Bureau of Prisons' (BOP) calculation of good time credit regarding his District of Columbia (D.C.) sentence. (Dkt. 1.) For the reasons below, the Court denies his petition.

## BACKGROUND

At the outset, the Court explains how a D.C. prisoner who is incarcerated in a Pennsylvania federal prison has a habeas corpus petition before this Court in Illinois. The Constitution gives Congress legislative authority over the District of Columbia. Art. I. § 8, cl. 17; *Financial Oversight and Mgmt. Bd. of Puerto Rico v. Aurelius Inv., LLC*, 140 S. Ct. 1649, 1658 (2020). This authority allows Congress to create a local government structure for D.C. that it could not otherwise create for cities in the 50 States. *Financial Oversight and Mgmt. Bd. of Puerto Rico*, 140 S. Ct. at 1658 (citing *District of Columbia v. John R. Thompson Co.*, 346 U.S. 100, 104-06 (1953)).

In 1973, Congress passed the District of Columbia Self-Government and Governmental Reorganization Act, Pub. L. 93-198, 87 Stat. 774 (1973), which remains in effect today. *Heller v. District of Columbia*, 670 F.3d 1244, 1250 (D.C. Cir. 2011). This law, and associated local D.C.

laws, allow for criminal prosecutions under the D.C. criminal code before local D.C. courts. *United States v. Harmon*, 514 F. Supp. 3d 47, 58 (D.D.C. 2020). Battle was convicted in the Superior Court of the District of Columbia after pleading guilty to committing two D.C. criminal code offenses on June 5, 1994: possession of a firearm during a crime of violence and carjacking. (Dkt. 15, p. 9, 26.) For these offenses, Battle received an indeterminate sentence of 12 to 36 years' imprisonment with a mandatory minimum sentence of 12 years. *Id.*

District of Columbia prisoners like Battle were previously incarcerated in a local D.C. area prison. *Crawford v. Jackson*, 323 F.3d 123, 125 (D.C. Cir. 2003). However, under the National Capital Revitalization and Self-Government Improvement Act of 1997 (Revitalization Act), Pub. L. No. 105-33, 111 Stat. 251 (codified at D.C. Code § 24-101), Congress ordered the D.C. prison closed, and transferred D.C. prisoners to federal prisons run by the BOP. *Crawford*, 323 F.3d at 125. This is how Battle came to be in the federal prison system for his D.C. crimes.

Battle was incarcerated at USP Thomson in the Northern District of Illinois at the time he filed this case before this Court. (Dkt. 1, p. 22.) A habeas corpus petition brought under 28 U.S.C. § 2241 is the appropriate vehicle to challenge the BOP's computation of an inmate's good time credits, *Pointer-Bey v. Rios*, 413 F. App'x 895, 896 (7th Cir. 2011) (non-precedential opinion) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 487 (1973); *Walker v. O'Brien*, 216 F.3d 626, 635 (7th Cir. 2000)), including a prisoner like Battle challenging the BOP's calculation of his good time credits for his D.C. sentence. *Eldridge v. Blanckensee*, No. 20-CV-1009 (UNA), 2021 WL 325959, at *3 (D.D.C. Feb. 1, 2021); *Smith v. Wilson*, No. 13-260-DRH-CJP, 2014 WL 859602, at *2 (S.D. Ill. Mar. 5, 2014). Additionally, a habeas corpus petition must be brought in the district of incarceration, *Webster v. Daniels*, 784 F.3d 1123, 1144 (7th Cir. 2015) (en banc), and a prisoner's

transfer during the pendency of a § 2241 proceeding does not divest the Court of authority over the case. *In re Hall*, 988 F.3d 376, 378 (7th Cir. 2021). The case is properly before the Court.

Proceeding to the merits, as mentioned above, Battle received an indeterminate sentence of 12 to 36 years' imprisonment with a mandatory minimum sentence of 12 years for his D.C. crimes. (Dkt. 15, p. 9, 26.) Battle's mandatory minimum term terminated on September 30, 2004. *Id.* at 14. He has not been released because his maximum term has not expired, and he has been denied parole each time he has been up for consideration. *Id.* at 14, 42-51.

The BOP projects Battle's mandatory parole date on his D.C. sentence as April 15, 2025.[1] *Id.* at 22. This computation is based on a sentence-commencement date of December 5, 1994, with 147 days of presentence jail credit, and 130 days of D.C. educational good time credit. *Id.*

Battle challenges the BOP's calculation of his D.C. sentence, specifically the BOP's award of good time credit towards his sentence. He argues that he is entitled to a retroactive award of 918 good time credits under D.C. Code § 24-403.01a, (Dkt. 1, p. 2-7), and an additional award of 168 credits under 28 C.F.R. § 523.20. (Dkt. 9, p. 1-3.) He further contends that these credits should be applied against his maximum term of imprisonment for purposes of determining when his release on parole becomes mandatory, which the BOP calculates as April 15, 2025. (Dkt. 1, p. 9; Dkt. 8,

---

[1] Battle will not be paroled upon reaching his mandatory parole date; rather he will begin serving sentences for crimes he committed while incarcerated for his D.C. criminal offenses. (Dkt. 15, p. 18-20.) In 1997, he was convicted in the Eastern District of Virginia of possession with intent to distribute heroin and was sentenced to 15 months' imprisonment to run consecutive to his D.C. sentence. *Id.* at 56-59. In 2013, Battle was convicted in the Northern District of West Virginia of four misdemeanor counts of indecent exposure. *Id.* at 60-65. For these offenses, he received a 360-day sentence to run consecutive to his prior D.C. and Virginia sentences. *Id.* Battle was convicted again in 2016 by a federal court in Arizona of felony indecent exposure and was sentenced to a 12-month prison term to run concurrently with his Virginia and West Virginia sentences. *Id.* at 66-69. His projected satisfaction date, based on a total term of 15 months and 360 days, is April 7, 2027, via good conduct time release. *Id.* at 21. The satisfaction date of April 7, 2027 appears to be based on a projected amount of 93 good time credits that Battle may be eligible to earn while serving his federal sentences. *Id.* at 24. The computation of Battle's future federal sentences, however, is not before this Court.

3

p. 1.) In response, Respondent argues that Battle's habeas corpus petition should denied because he has been awarded all the good time credits to which he is entitled, and the BOP's sentence computation for his D.C. sentence is correct. (Dkt. 15, p. 1-6.) Because the BOP has correctly calculated and applied Battle's good time credits towards his D.C. sentence, the Court denies the habeas corpus petition.

## ANALYSIS

**A.** **Good Time Credit Eligibility Under the D.C. Code**

Under the Revitalization Act, the BOP is responsible for computing the sentences of D.C. Code offenders, like Battle, incarcerated in federal prisons. *Harris v. Wolfe*, No. 5:21-CV-52, 2021 WL 4558211, at *3 (N.D.W. Va. Sept. 15, 2021) (citing D.C. Code § 24-101(b)). The statute provides that "[s]uch prisoners shall be subject to any law or regulation applicable to persons committed for violations of laws of the United States consistent with the sentence imposed." D.C. Code § 24-101(b). Thus, even though the BOP is responsible for computing the sentences of D.C. offenders housed in its facilities, D.C. Code continues to control the computation of such sentences. *Harris*, 2021 WL 4558211, at *3; BOP Program Statement No. 5880.33 (P.S. No. 5880.33), District of Columbia Sentence Computation Manual, Ch. 1, p. 1.[2]

### 1. District of Columbia Good Time Credits Act of 1986

Because Battle committed his D.C. Code offenses on June 5, 1994, his sentence falls under the District of Columbia Good Time Credits Act of 1986 (Good Time Credits Act), formerly codified at D.C. Code §§ 24-428 *et seq. See Roberts v. Wilson*, No. 3:13-CV-614, 2015 WL 3932363, at *4 (E.D. Va. June 25, 2015). The Act took effect on April 11, 1987, and applies to

---

2 *Available at*: https://www.bop.gov/policy/progstat/5880_033.pdf (last visited Dec. 13, 2022).

offenses committed on or after that date through June 21, 2004. *Roberts*, 2015 WL 3932363, at *4; P.S. No. 5880.33, Ch. 12.

Before the statute's enactment, D.C. law did not permit good time credits to be applied against minimum sentences; they were allowed only against a prisoner's maximum term. *Solomon v. United States*, 569 A.2d 1185, 1186 (D.C. 1990). The Good Time Credits Act changed the previous law by allowing good time to be credited against both a D.C. offender's minimum and maximum term of imprisonment. *Id.*; *see also* P.S. No. 5880.33, Ch. 12, p. 1-4; D.C. Code §§ 24-428(b) (repealed), 24-429(b) (now cited as D.C. Code § 24.221.01). Under the Act, good time credit applied to a prisoner's "minimum term of imprisonment to determine the date of eligibility for release on parole[,] and to [his] maximum term of imprisonment to determine the date when release on parole becomes mandatory." *Cutchin v. United States Parole Comm'n*, 72 F. Supp. 3d 154, 157 (D.D.C. 2014) (internal quotation marks and citation omitted) (alterations in original). "Its application 'neither advance[d] his full-term date nor otherwise hasten[ed] the expiration of his maximum sentence,' …. but instead it would have made him eligible for parole release 'earlier than otherwise authorized by the sentence he received.'" *Id.* (citing *Ramsey v. Faust*, 943 F. Supp. 2d 77, 82 (D.D.C. 2013)) (alterations in original).

The Act, however, did not permit good time credits to be awarded against a D.C. Code offender's mandatory minimum term. P.S. No. 5880.33, Ch. 12, p. 5, Ch. 16, p. 4-5. Mandatory minimum terms differ from minimum terms in that a mandatory minimum is a term under which a court "cannot set a period of parole ineligibility any less than prescribed for the offense." *Id.* at Ch. 16, p. 1. Prisoners who had a minimum term of imprisonment equal to their mandatory minimum term were therefore not eligible for good time credit, as their parole eligibility date could

5

not be advanced to a date earlier than the date established by the mandatory minimum term. *Id.* at Ch. 16, p. 5; *see also Coachman v. United States Parole Comm'n*, 816 F. Supp. 2d 20, 23 (D.D.C. 2011).

### 2. D.C. Educational Good Time Credit

Under the Good Time Credits Act, educational good time credit was earned upon successful completion of a designated academic or vocational program. *Feaster v. Fed. Bureau of Prisons*, No. CV-11-00453-TUC-JGZ, 2014 WL 4322402, at *7 (D. Ariz. Sept. 2, 2014); P.S. No. 5880.33, Ch. 12, p. 3; *see also* BOP Program Statement 5884.02 (P.S. No. 5884.02), Educational Good Time Sentence Credits for D.C. Code Offenders.[3] D.C. Code offenders could earn up to five days of educational good time credit for each month they were enrolled in such a program, up to the maximum amount designated by the BOP. P.S. No. 5884.02, p. 3. Credits were awarded upon receipt of the "D.C. Educational Good Time" form from the Supervisor of Education certifying the inmate's completion of an eligible program. P.S. No. 5880.33, Ch. 12, p. 3, 5; P.S. No. 5884.02, p. 8.

In addition to the requirements above, compliance with prison rules was a pre-condition to eligibility for educational good time credit. P.S. No. 5884.02, p. 5-6. Prisoners who violated prison rules were not eligible for one month's worth of credit for each disciplinary incident committed during the program enrollment period. *Id.* at 5.

In 2009, the Good Time Credits Act was amended to provide D.C. Code offenders with educational good time credit for active participation, rather than completion, in eligible academic or occupational programs. (Dkt. 15, p. 27-30); *see also* D.C. Code § 24-211.01 (formerly cited as

---

3 *Available at*: https://www.bop.gov/policy/progstat/5884_002.pdf (last visited Dec. 13, 2022).

D.C. Code § 24-429). The amendment does not apply retroactively to activities before its enactment. (Dkt. 15, p. 30.) Nor does it change the requirement that an inmate must refrain from violating prison rules to be eligible for such credit. *Id.* at 28.

### 3. D.C. Institutional Good Time Credit

The Good Time Credits Act also provided for an award of institutional good time credit to D.C. Code offenders who complied with all applicable institutional rules. P.S. No. 5880.33, Ch. 12, p. 1-2. The time credited per month depended on the length of the prisoner's sentence, with credits of 10 days per month applying to a sentence of "10 years or more." *Id.* As discussed above, institutional good time was credited against a D.C. Code offender's maximum and minimum term of imprisonment, but it could not be applied against the mandatory minimum portion of his sentence. P.S. No. 5880.33, Ch. 16, p. 5; *see also Juman v. Wingfield*, No. 1:21-CV-01232-JMC, 2022 WL 286171, at *3 (D.S.C. Jan. 31, 2022) (citations omitted).

In 2021, the D.C. Code was amended to allow D.C. prisoners who committed their offenses before August 5, 2000,[4] to be retroactively awarded good time credit "of up to 54 days, or more if consistent with 18 U.S.C. § 3624(b), for each year of the defendant's sentence imposed by the court, subject to determination by the [BOP] that during those years the defendant has met the conditions provided in 18 U.S.C. § 3624(b)." D.C. Code § 24-403.01a. Section 3624(b) provides that prisoners who display "exemplary compliance with institutional disciplinary regulations" may be awarded up to 54 days of good time credit per year. 18 U.S.C. § 3624(b)(1). The statute further

---

[4] The amendment applied to D.C. offenses committed before August 5, 2000, because the Sentencing Reform Act of 2000, took effect on August 5, 2000, and made credit under 18 U.S.C. § 3624(b) applicable to offenses committed from that date forward. *See Juman,* 2022 WL 286171, at *3; D.C. Code § 24-403.01(d); *see also* P.S. No. 5880.33, Ch. 13a, p. 1. Section 24-403.01a therefore extended eligibility for good time credits consistent with 18 U.S.C. § 3624(b) to D.C. prisoners sentenced under the Good Time Credits Act (which applied to D.C. offenses committed between April 11, 1987 and June 21, 1994) and the Omnibus Criminal Justice Reform Amendment Act of 1994 (which applied to D.C. offenses committed between June 22, 1994 and August 4, 2000). *See Juman,* 2022 WL 286171, at *3.

provides that the BOP shall consider whether the prisoner has earned, or is making satisfactory progress toward earning, a high school diploma or equivalent degree in awarding such credit. *Id.*

For D.C. Code offenders who committed their offenses before June 22, 1994, the good time credit award under § 24-403.01a may be applied only to their mandatory minimum term of imprisonment. D.C. Code § 24-403.01a(b)(2). Specifically, the statute provides that, for such offenders, the award of good time credit "[i]s not intended to modify how the defendant is awarded good time credit toward any portion of the sentence other than the mandatory minimum." *Id.*

With this backdrop in mind, the Court turns to the merits of Battle's claims.

**B.     The BOP Correctly Calculated Battle's Good Time Credits**

    **1.     Battle's Educational Good Time Credit Award is Correct**

Battle claims that he actively participated in a GED literacy program from September 2002 through August 2018, but only received educational good time credit for his participation in this program from September 2009 through February 2015. (Dkt. 1, p. 6.) He contends that his participation entitles him to an additional, retroactive good time award of 54 days per year under D.C. Code § 24-403.01a for the period of time between 1995 through 2008, 2013, and 2015 through 2016, for a total of 918 days. (Dkt. 1, p. 2-7.) Additionally, despite his discontinuation of the program in 2018, Battle argues he is entitled to 168 days of good time credit (42 days per year from 2018 through 2021) under 28 C.F.R. § 523.20. (Dkt. 9, p. 2.) Neither claim has merit.

As to his eligibility for credit under D.C. Code § 24-403.01a, Battle committed his D.C. Code offenses on June 5, 1994, and thus can only apply good time credit earned under this statute to his mandatory minimum sentence. § 24-403.01a(b). The BOP calculated that Battle was eligible for 648 days of good time credit (12 years x 54 days) under this provision. (Dkt. 15, p. 22.) The

8

credit, however, has no impact on Battle's sentence because he is no longer serving his mandatory minimum term, which expired on September 30, 2004. *Id.* at 16, 22. And because the statute does not permit this good time credit award be applied anywhere but his mandatory minimum term, Battle cannot have it credited against another portion of his sentence.[5] D.C. Code § 24-403.01a(b)(2); *see also Juman*, 2022 WL 286171, at *2 (quoting D.C. Code § 24-403.01a(b)(2)) ("the statutory text leaves no room for ambiguity: defendants 'serving a term of imprisonment for an offense committed before June 22, 1994' are only eligible for relief under Subsection (b) if they are serving a 'mandatory minimum term of incarceration.'").

Likewise, Battle is not entitled to an award of 42 days of credit per year as he so contends. In support of this contention, Battle relies upon 28 C.F.R. § 523.20, the rule promulgated by the BOP that reflects its interpretation of the federal prisoner "good time" statute, 18 U.S.C. § 3624(b). *See White v. Scibana*, 390 F.3d 997, 999 (7th Cir. 2004). Section 523.20 provides that federal inmates who have not earned, or are not making progress toward earning, a high school diploma, equivalent degree, or BOP-authorized alternative program may be awarded 42 days of good conduct time for each year of the sentence imposed. 28 C.F.R. § 523.20(d)(2)(ii). This provision applies only to prisoners serving a sentence for an offense committed on or after April 26, 1996. 28 C.F.R. § 523.20(d)(2). Battle does not fall under this provision because he committed his D.C. Code offenses on June 5, 1994. In any event, because Battle is a D.C. Code offender, his sentence computation must be consistent with D.C. law. *See* D.C. Code § 24-101(b). As discussed above, D.C. Code offenders who committed offenses before June 22, 1994, and satisfy the conditions

---

5 In any event, even if § 24-403.01a(b) could apply to Battle's mandatory minimum sentence, the credits awarded would serve only to advance his parole eligibility date. That he hypothetically served a longer mandatory minimum term, however, is of no consequence, as Battle has had six parole hearings since the expiration of his mandatory minimum term and has been denied parole each time. *See* (Dkt. 15, p. 42-51).

provided in § 3624(b), may be awarded good time credit only against the mandatory minimum portion of their sentence, and because Battle's mandatory minimum term has expired, such credit has no impact on his sentence. *See* D.C. Code § 24-403.01a(b).

Thus, Battle is not entitled to additional educational good time credit as he so claims. Rather, the record shows that he has received all the credit to which he is entitled. Though he asserts he participated in a GED literacy program from 2002 to 2018, participation alone was not sufficient for earning educational good time credit until the law was amended in 2009. (Dkt. 15, p. 27-30); D.C. Code § 24-221.01. Additionally, for credit to be awarded, BOP policy requires a D.C. Educational Good Time form be submitted by the Supervisor of Education. P.S. No. 5880.33, Ch. 12, p. 5; *see also Sawyers v. Warden, USP Atlanta*, 465 F. App'x 837, 838-39 (11th Cir. 2012) (non-precedential opinion); *Brooks v. Wilson*, No. 3:14-CV-493-HEH, 2015 WL 4496251, at * 4 (E.D. Va. July 22, 2015); *Feaster*, 2014 WL 4322402, at *7. The record contains D.C. Educational Good Time forms for Battle's participation in GED programs at varying times between September 30, 2009, and August 9, 2018. (Dkt. 15, p. 37-41.) These programs and the corresponding dates are reflected on Battle's sentence computation sheet. *Id.* at 22. By participating in these programs, Battle was eligible to receive a total of 155 educational good time credits (31 months total of participation x 5 credits per month). *Id.* at 22. However, because he violated prison rules on five separate occasions, he lost 25 credits (5 incidents x 5 credits per month), thus resulting in a total award of 130 credits as is reflected on his sentence computation sheet. *Id.* Battle does not contest the accuracy of the D.C. Educational Good Time forms, and concedes that he stopped participating in the GED literacy program on August 9, 2018. (Dkt. 9, p. 2.)

In sum, eligible credit under D.C. Code § 24-403.01a(b) cannot be applied against Battle's sentence because he is not currently serving a mandatory minimum term, 28 C.F.R. § 523.20 does not apply to his sentence, and he is no longer participating in an eligible educational or vocational program that would entitle him to additional educational good time credit. Rather, the record shows Battle intermittently participated in a GED program from 2009 to 2018, and that the BOP properly computed and credited his sentence with all of the educational good time (less credit lost for violating prison rules) for this participation.

### 2. Battle's Institutional Good Time Credit Award is Correct

Battle does not make a specific claim for institutional good time credit other than his argument that he is entitled to retroactive credits under D.C. Code § 24-403.01a(b). For the reasons discussed above, this claim fails because he is not currently serving a mandatory minimum sentence. *See* D.C. Code § 24-403.01a(b); *Juman*, 2022 WL 286171, at *2. Additionally, because the mandatory portion of his sentence was equal to his minimum term, institutional good time credit under the Good Time Credits Act could not be applied against his minimum sentence to advance his parole eligibility date. P.S. No. 5880.33, Ch. 16, p. 5; *see also Coachman*, 816 F. Supp. 2d at 23.

As for his mandatory parole date, this date appears to have been determined, as the Good Time Credits Act so provides, based on his maximum sentence of 36 years less good time credit. *See* P.S. No. 5880.33, Ch. 12, p. 1-4. Applying Battle's presentence jail credit of 147 days to his mandatory minimum sentence, expiration of the full mandatory term of 36 years would expire on July 10, 2030. (Dkt. 15, p. 16); *see also* P.S. No. 5880.33, Ch. 16, p. 2 ("Minimum terms, including mandatory minim terms, receive jail time credit."). As discussed above, Battle earned 130 days of

11

educational good time credit, which is subtracted from the date of his mandatory-term-expiration on July 10, 2030. P.S. No. 5880.33, Ch. 12, p. 3.

Additionally, although not discussed by Respondent, Battle's BOP sentencing computation sheet shows that he is eligible for a statutory good time award of 4,320 days based on a statutory good time rate of 10 years. (Dkt. 15, p. 16.) As one district court has explained, "in the federal system, institutional good time is referred to as Statutory Good Time … and accrues at a rate determined by statute." *Feaster*, 2014 WL 4322402, at *5 n. 9. The statutory good time rate is the same rate the Good Time Credit Act applies in calculating institutional good time credit, i.e., a prisoner, like Battle, with a prison term of ten years or more is eligible for 10 days of credit per month. *Id.*; P.S. No. 5880.33, Ch. 16, p. 1-2 ("The formula for determining [institutional good time] is the same as for [statutory good time]…"). Battle's statutory good time award of 4,320 days is thus based on an award of 10 credits per month for each month of his 36-year mandatory term (36 x 12 x 10). (Dkt. 15, p. 16.) Battle, however, has an extensive history of disciplinary infractions which has resulted in the forfeiture of 2,538 days of statutory good time. *Id.* at 22-23. This results in a net award of 1,782.

Subtracting Battle's educational good time award (130 days) and statutory good time award (1,782 days) from his mandatory term expiration date (July 10, 2030) advances the date when release on parole becomes mandatory for his D.C. sentence to April 15, 2025. This date aligns with the mandatory parole date currently projected by the BOP based on the amount of good time credit to which Battle is presently entitled toward his D.C. sentence.[6] *Id.* at 17. This date, of course,

---

6 Although not challenged by Battle, Respondent asserts that he is not entitled to any extra good time credit because he has not maintained a job for any significant amount of time. (Dkt. 15, p. 5, 12.) D.C. Code offenders who committed their offenses before June 22, 1994, may be awarded extra good time, at the BOP's discretion, against their maximum term of imprisonment through "acceptable behavior, industrial employment, and/or meritorious service." *Hughes v.*

12

is only a projection, and is subject to change should Battle's good time credits be forfeited or otherwise revoked. But as to Battle's challenges to his current award of good time credit, the BOP's computation is correct.[7]

### 3. Battle's Ex Post Facto Argument

Finally, Battle's reply brief challenges Respondent's reliance on the BOP's Program Statement on Educational Good Time Sentence Credit for D.C. Code Offenders, No. 5884.02. (Dkt. 16, p. 5.) He contends the BOP's Program Statement and corresponding regulations violate the Ex Post Facto Clause of the Constitution because they exclude special education programs from educational good time credit eligibility and limit eligible programs to those approved or designed by the inmate's Unit Team. (Dkt. 16, p. 8-9.)

Battle's ex post facto argument is waived because he raised it for the first time in his reply brief. *See White v. United States*, 8 F.4th 547, 552-53 (7th Cir. 2021) (citing *Wonsey v. City of Chicago*, 940 F.3d 394, 398 (7th Cir. 2019); *United States v. Vitrano*, 747 F.3d 922, 925 (7th Cir.

---

*Sabol*, No. 09-CV-40053-MLW, 2010 WL 2640171, at *4 (D. Mass. June 26, 2010) (quoting *McCray v. United States Bd. of Parole,* 542 F.2d 558, 560 (10th Cir. 1976)); *Akbar v. Babcock*, No. 09-810 (DSD/SRN), 2009 WL 3062001, at *4-5 (D. Minn. Sept. 21, 2009) (citing *Waletzki v. Keohane*, 13 F.3d 1079, 1081 (7th Cir. 1994)); *see also* 18 U.S.C. § 4162 (repealed); P.S. No. 5880.33, Ch. 11, p. 3-4. Battle makes no claim for extra good time, nor does the record suggest he could make the requisite showing for entitlement to such credit. *See Akbar*, 2009 WL 3062001, at *5 ("absent a showing of arbitrary or capricious discretion by the BOP, [petitioner] may not claim that he is entitled to additional [extra good time] credit"). There is thus no basis to find Battle is entitled to extra good time credit.

7 Upon Battle's mandatory parole date, he will begin serving his consecutive 15-month and 360-day sentences for the federal crimes he committed while incarcerated for his D.C. Code offenses. (Dkt. 15, p. 18-20, 56-73.) The BOP projects his satisfaction date for these sentences, is April 7, 2027, via good conduct time release. *Id.* at 20-21. The Court acknowledges that the projected satisfaction date of April 7, 2027 differs from the June 6, 2029 release date listed on the Bureau of Prisons' inmate locator webpage. *Available at*: https://www.bop.gov/inmateloc/ (last visited Dec. 28, 2022). But the computation of Battle's federal sentences is not an issue before this Court; rather the only question is whether the BOP correctly calculated the good time credits to which Battle is entitled toward his D.C. sentence which, as discussed above, the Court answers in the affirmative.

13

2014)) ("arguments raised for the first time in [petitioner's] reply brief are waived because they leave no chance to respond"). Even if not waived, his argument is unavailing.

"[F]or a criminal or penal law to be *ex post facto*: it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it." *Weaver v. Graham*, 450 U.S. 24, 29 (1981). Battle argues Program Statement No. 5884.02 and C.F.R. § 523.31 meet *Weaver*'s second prong because they exclude programs that are otherwise credit-eligible under D.C. Code § 24-429 (now cited as D.C. Code § 24-221.01),[8] and because they limit eligibility to D.C. Code offenders whose Unit Team approved or designed a plan for him to complete a program designated by the BOP as eligible for educational good time credit. (Dkt. 16, p. 8-9.) But Battle's argument is simply a recitation of the procedures the BOP has established to award educational good time credit. *See* P.S. No. 5884.02; C.F.R. § 523.31. He has not shown that a change in these procedures has occurred, let alone one that works to his detriment. *See Goodwin v. Lockett*, 453 F. App'x 645, 646 (7th Cir. 2011) (non-precedential opinion) (quoting *Hadley v. Holmes*, 341 F.3d 661, 664 (7th Cir. 2003)) ("A change in prison policy relating to good-time credits violates the Ex Post Facto Clause 'only if it makes the punishment for a crime more onerous after its commission.'"). That he takes issue with the procedures that have been established is not grounds for an *ex post facto* claim.[9] *See Feaster*, 2014 WL 4322402, at *8 (rejecting

---

8 Specifically, Battle argues Program Statement No. 5884.02 excludes special education programming, whereas D.C. Code § 24-221.01 provides that educational good time credit may be awarded for "successful[] participat[ion] in an academic or vocational program, including special education and Graduate Equivalency Diploma programs." (Dkt. 16, p. 8.) However, contrary to Battle's assertion, the BOP's Program Statement addresses educational good time credit awards for D.C. Code offenders with special learning needs. P.S. No. 5884.02, p. 3.

9 As part of his *ex post facto* claim, Battle mentions that Program Statement No. 5884.02 is "outdated and inadequate" to implement the applicable D.C. Code provisions. (Dkt. 16, p. 6.) The Court acknowledges that the memorandum announcing the 2009 amendment to D.C.'s educational good time statutory provision, (which as discussed above, amended the statute to allow good time credit awards for participating in designated academic or occupational programs), indicated the BOP's Program Statement would be amended to incorporate the change in law. (Dkt. 15, p.

14

petitioner's *ex post facto* argument where he failed to explain "how the PS 5884.02, which specifically establishes procedures for awarding [educational good time credit] under D.C. Code § 24-429, is a violation of the Ex-Post Facto Clause").

In sum, Battle has failed to demonstrate that the BOP's award of good time credit is incorrect. The BOP has correctly applied all the good time credits to which Battle is currently entitled toward his D.C. sentence. His § 2241 petition is denied.

## NOTICE OF APPEAL RIGHTS

Battle is advised that this is a final decision ending his case in this Court. If Battle wishes to appeal, he must file a notice of appeal with this Court within 60 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1)(B). Battle need not bring a motion to reconsider this Court's ruling to preserve his appellate rights. However, if Battle wishes the Court to reconsider its judgment, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). Any Rule 59(e) motion must be filed within 28 days of the entry of this judgment. *See* Fed. R. Civ. P. 59(e). The time to file a motion pursuant to Rule 59(e) cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled upon. *See* Fed. R. App. P. 4(a)(4)(A)(iv). Any Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. *See* Fed. R. Civ. P. 60(c)(1). The time to file a Rule 60(b) motion cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A Rule 60(b) motion suspends the deadline for

---

27.) That the Program Statement has not yet been amended does not help Battle's argument. *See* Fed. Bureau of Prisons, *Inmate and Custody Management Policy*, https://www.bop.gov/PublicInfo/execute/policysearch?todo=query&series=5000 (last visited Dec. 20, 2022). Battle takes issue with the programs eligible for educational good time, but the 2009 amendment did "not alter the types of programs for which credit is earned." (Dkt. 15, p. 27-28); *see also* 28 C.F.R. § 523.31.

15

filing an appeal until the Rule 60(b) motion is ruled upon only if the motion is filed within 28 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(4)(A)(vi).

## **CONCLUSION**

Battle's habeas corpus petition (Dkt. 1) is denied. Any other pending motions are denied as moot. The Clerk is instructed to enter a Rule 58 judgment in favor of Respondent and against Petitioner. Civil Case Terminated.

Date: January 4, 2023

ENTERED:

_____
IAIN D. JOHNSTON
United States District Judge